IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | |
|---|---|
| Robert Martin,<br><br>        Plaintiff,<br>v.<br><br>Kilolo Kijakazi, Acting Commissioner of Social Security Administration,<br><br>        Defendant. | Case No. 1:23-cv-01821-RMG<br><br>**ORDER AND OPINION** |

      Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain relief from the final decision of the Commissioner of the Social Security Administration denying him Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 D.S.C., this matter was referred to a United States Magistrate Judge for pretrial handling. The Magistrate Judge issued a Report and Recommendation ("R & R") on October 25, 2023, recommending that the Commissioner's decision be reversed and remanded for further administrative action. (Dkt. No. 11). The Commissioner filed objections to the R & R, and Plaintiff filed a reply. (Dkt. Nos. 12, 13). As set forth below, the Court reverses the decision of the Commissioner and remands this matter to the agency with instructions to award benefits.

    **I.**    <u>**Legal Standard**</u>

      The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo* determination of those portions of the R & R to which specific objection has been made, and may

1

accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge. 28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme of the Social Security Act is a limited one. Section 405(g) of the Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes *de novo* review of factual circumstances that substitutes the Court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971).

Although the federal court's review role is limited, "it does not follow, however, that the findings of the administrative agency are mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings." *Vitek*, 438 F.2d at 1157-58.

Under the regulations of the Social Security Administration in effect at the time of Plaintiff's application for disability benefits, the Commissioner was obligated to give deference to the opinions of the claimant's treating physicians. 20 C.F.R. § 404.1527(c).[1] Under the regulation, popularly known as the "Treating Physician Rule," the Commissioner committed to "[g]enerally . . . give more weight to medical opinions from . . . treating sources" based on the view that "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal

---

[1] This regulation was rescinded for all applications for disability benefits filed after March 27, 2017.

picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultive examinations or brief hospitalizations." § 404.1527(c)(2).  Further, the regulation provided that the Commissioner "[g]enerally . . . give[s] more weight to the medical opinion of a source who has examined [the claimant] than to the medical opinion of a medical source who has not examined [the claimant].  § 404.1527(c)(1).

Under some circumstances, the opinions of the treating physicians are to be accorded controlling weight.  Even where such opinions are not accorded controlling weight, the Commissioner is obligated to weigh those opinions in light of a broad range of specifically identified factors, including (1) the examining relationship; (2) the nature and extent of the treatment relationship; (3) supportability of the opinions in the medical record; (4) consistency; and (5) whether the treating physician is a specialist.  § 404.1527(c)(1)-(5).  Where the decision is not fully favorable and provides greater weight to a source than the medical opinion of a treating physician, the Commissioner must provide in the decision "specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  SSR 96-2P, 1996 WL 374188 at *5.  Further, the Treating Physician Rule mandates that the Commissioner must always give "good reasons" for the weight given to the opinions of a treating physician.  § 404.1527(c)(2).

## II.     Factual Background

Plaintiff's application for Social Security disability benefits has followed a long and protracted process.  Plaintiff filed his initial application for disability benefits on April 2, 2012, asserting an onset date of disability of July 21, 2009.  Plaintiff asserted that he was disabled based upon degenerative disc disease, bilateral carpal tunnel syndrome, and depression.  In support of

his application for disability benefits, Plaintiff submitted a transcript of an interview Plaintiff's counsel conducted with Plaintiff's treating specialist physician, Dr. Dwight Jacobus, a pain management specialist. The transcript was signed by Dr. Jacobus. Dr. Jacobus explained that he had diagnosed Plaintiff with a L5 radiculopathy based upon his clinical evaluation, a nerve conduction study, and a lumbar MRI. (Dkt. No. 7-7 at 112-116). The MRI documented the presence of a L4-5 herniated disc that "compresses the area of the L5 nerve root." (*Id*. at 51). Dr. Jacobus explained that due to Plaintiff's impairments, he "needs to avoid repetitious pushing, pulling and lifting" and " [n]o stooping." (*Id.* at 114).

An Administrative Law Judge ("ALJ") issued a decision on October 30, 2014, finding that although Plaintiff suffered from severe physical and mental impairments, he nonetheless retained the residual functional capacity to perform light work.[2] Plaintiff filed an appeal to this Court, which was referred to a Magistrate Judge for pretrial handling. The Magistrate Judge issued a R & R on January 20, 2017 recommending that the decision of the Commissioner be reversed and remanded because the ALJ failed to evaluate the opinions of Dr. Jacobus in accord with the Treating Physician Rule. *Martin v. Berryhill,* C.A. No. 1:16-1562, Dkt. No. 15 (D.S.C. 2017). The Magistrate Judge detailed in the R & R Dr. Jacobus' diagnosis of L5 radiculopathy and referenced his statement that Plaintiff should not engage in any stooping, defined as "bending at the waist." (*Id*. at 40). The Court adopted the R & R as the order of the Court and remanded the matter to the agency "for further proceedings consistent with this order." (Dkt. No. 19 at 2). The Commissioner did not appeal the Court's decision.

---

[2] Social Security regulations classify work in five general categories: very heavy work, heavy work, medium work, light work, and sedentary work. 20 C.F.R. § 404.1567.

Plaintiff's application for disability benefits was processed a second time administratively by the Social Security Administration, with a second adverse decision issued on February 12, 2019, finding again that Plaintiff retained the residual functional capacity to perform light work. The appeal was referred to the Magistrate Judge for pretrial handling. The Magistrate Judge issued a R & R on December 16, 2020, recommending that the decision of the ALJ be reversed because of the failure to evaluate Dr. Jacobus' medical opinions in accord with the Treating Physician Rule. *Martin v. Saul*, C.A. No. 1:20-874, Dkt. No. 14 (D.S.C. 2020). The Magistrate Judge was particularly critical of the ALJ for rejecting Dr. Jacobus' medical opinions based upon the ALJ's personal lay opinions. (*Id*. at 62, 65-66). The Court adopted the R & R of the Magistrate Judge as the order of the Court and again remanded the matter to the agency for further processing "consistent with this order." (Dkt. No. 17). The Commissioner did not appeal the Court's second reversal and remand.

On December 7, 2022, the ALJ issued a partially favorable decision, finding that Plaintiff was, in fact, disabled on and after April 22, 2016, but was not disabled prior to that date because he retained the residual functional capacity to perform less than the full scope of sedentary work. (Dkt. No. 7-15 at 139-170). The Magistrate Judge issued a R & R on October 25, 2023, recommending that the decision of the Commissioner be reversed based on a variety of legal deficiencies in the ALJ's decision, including a failure to properly evaluate the opinions of Dr. Jacobus in accord with the Treating Physician Rule. The Magistrate Judge stated that the ALJ failed to explain why she "rejected the limitations Dr. Jacobus indicated with respect to stooping and repetitive pushing, lifting, handling, and fingering" and "did not explain why she credited the negative findings over the positive in rejecting the degree of limitation Dr. Jacobus indicated." (Dkt. No. 11 at 78-79). Rather than providing for a "no stooping" limitation in the RFC as

5

indicated as necessary by Dr. Jacobus, the ALJ's RFC allowed for occasional stooping, kneeling, crouching, and crawling. (Dkt. No. 7-15 at 146).

The Commissioner filed objections to the R & R, arguing that the ALJ implicitly accommodated Dr. Jacobus' limitations by limiting Plaintiff to a sedentary work level and providing at least two potential jobs that the Commissioner asserted required no stooping. (Dkt. No. 12 at 2). Plaintiff argued in reply that the Commissioner had failed to explain why certain limitations of Dr. Jacobus were rejected and that agency policy provides that a "complete inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply . . ." (Dkt. No. 13 at 2). *See*, 96-9P, 1996 WL 374185 at *8 (July 2, 1996).

### III. Discussion

It is important to note at the outset how the Commissioner's position on Plaintiff's capacity to perform work has evolved over these three appeals and just how close the Commissioner's present decision is to recognizing that Plaintiff is disabled under the Social Security Act. In the first two ALJ decisions, the ALJ found Plaintiff retained the capacity to perform light work. In the administrative decision now before the Court, however, the Commissioner found Plaintiff was, in fact, disabled from April 22, 2016 forward, but was not disabled prior to that date because he retained until April 21, 2016 the residual functional capacity to perform less than the full scope of sedentary work. Agency policy provides that "an RFC for less than the full range of sedentary work reflects serious limitations resulting from an individual's medical impairment(s) and is expected to be relatively rare." SSR 96-9P, 1996 WL 374185 at *1. Thus, the present ALJ decision finds that for the period July 21, 2009 until April 21, 2016, Plaintiff retained the lowest possible RFC that would still allow the Commissioner to find him not disabled.

The ALJ over three different decisions has failed to adequately explain why the limitations that Dr. Jacobus provided for no stooping or repetitive pushing, lifting, handling, and fingering were rejected. Where the opinions of a treating physician are rejected, the Commissioner must provide "good reasons" that "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." § 404.1527(c)(2); 96-2P, 1996 WL 374188 at *5. The ALJ plainly failed to meet this standard. (Dkt. No. 11 at 78-79). After three unsuccessful efforts by the ALJ to provide "good reasons" for rejecting the opinions of Dr. Jacobus, it is obvious that the record before the Court fails to provide a sufficient basis to reject Dr. Jacobus' opinions.

The Commissioner asserts in her objections that the failure to explain the rejection of Dr. Jacobus' limitations on stooping and repetitive pushing, pulling, lifting, handling, and fingering is really no big deal. This position is contrary to the record before the Court and the regulations of the Social Security Administration. First, the vocational expert was asked by Plaintiff's counsel at the administrative hearing of December 7, 2021 whether the limitations provided by Dr. Jacobus would allow an individual to be able to perform any work in the national economy. These limitations included lifting 10 pounds or more during one third of the day, no stooping, and no repetitive pushing, pulling, and lifting. The vocational expert responded to that hypothetical question by stating that "I think that's less than a sedentary RFC and would–would preclude gainful work in meaningful numbers." (Dkt. No. 7-14 at 47). Under agency regulations, the Commissioner has the burden of providing "evidence about the existence of work in the national economy that [the claimant] can do . . . given [his] residual functional capacity . . ." 20 C.F.R. § 404.1512(b)(3). This is normally provided by the Commissioner through the testimony of a vocational expert. Based on the testimony of the vocational expert offered in the December 7,

2021 administrative hearing, the adoption of the limitations provided by Dr. Jacobus would render Plaintiff disabled under the Social Security Act.

Second, as referenced earlier in the order, a "complete inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply . . ." SSR 96-9P, 1996 WL 374185 at *8 (emphasis removed). The Rule goes on to provide that "[c]onsultation with a vocational resource may be particularly useful for cases where the individual is limited to less than occasional stooping." (*Id*.) In this case, the vocational expert opined that the combination of limitations provided by Dr. Jacobus would render Plaintiff disabled.

The Court finds that there is not substantial evidence in the record to support the rejection of Dr. Jacobus' opinions regarding the need for limitations in the RFC for no stooping and no repetitive pushing, pulling, lifting, handling, and fingering. Further, the Court finds that the Commissioner has failed to provide the testimony of a vocational expert that a claimant with Plaintiff's properly determined RFC would have available substantial work in the national economy. The combination of these two findings renders Plaintiff disabled under the Social Security Act.

The only issue remaining is whether the Court should send this matter back to the agency for a third time after reversal for further administrative processing or remand the case with an order to award benefits. This Court's general practice is to remand to the agency for further proceedings, but it is well settled that the Court has the authority to award benefits. 42 U.S.C. § 405(g). An award of benefits by a district court is appropriate where, as here, the record is fully developed, and it is clear the Commissioner would be required to award benefits on remand. *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004); *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001); *Brown v. Kijakazi*, No. 2:31-353-RMG, 2021 WL 5276031, at *2 (D.S.C. Nov. 12,

2021).  This is particularly true where there has been a significant lapse of time in the administrative processing of the claim.  *Podedworny v. Harris*, 745 F.2d 210, 223 (3d Cir. 1984).  This application for benefits was filed on April 2, 2012, more than *eleven* years ago.  The time to award benefits has now arrived.

### IV.    Conclusion

Based on the foregoing, the Court reverses the decision of the Commissioner pursuant to Sentence Four of 42 U.S.C. § 405(g) and the remands the matter to the agency to award benefits from Plaintiff's onset date of July 21, 2009 until April 21, 2016.

**AND IT IS SO ORDERED**.

s/Richard Mark Gergel
Richard M. Gergel
United States District Judge

November 27, 2023
Charleston, South Carolina

9